# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Gold Apple iPhone in a red protective case

Case No. 1:23 MJ 55

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the **Middle** District of **North Carolina**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Dealing in firearms without a license |

The application is based on these facts:
See attached affidiavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Eli VanKuren
*Applicant's signature*

Eli VanKuren, Task Force Officer, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 02/01/23

*Judge's signature*

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Eli VanKuren, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

3. Your Affiant is a Police Officer for the Winston-Salem Police Department (WSPD) and has been so employed since August 2015. Your Affiant is a graduate of the North Carolina Basic Law Enforcement Training taught by the Winston-Salem Police Department. Your Affiant is also duly sworn as a Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Your Affiant holds a bachelor's degree in psychology from

Harding University. During your Affiant's career in Law Enforcement, your Affiant has participated in multiple advanced training to include the North Carolina Police Law Institute, Basic Gang Investigations, Violent Criminal Apprehension Techniques, and Basic Cell Phone Investigations among others.

4. As a Federal Task Force Officer, your Affiant is authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

5. Your Affiant has conducted and assisted with numerous investigations involving the commission of violent crimes, such as shootings, aggravated assaults, robberies, etc. Through instruction, training, experience, participation in investigations, and the exchange of information with other law enforcement agents and officers, your Affiant has become familiar with the way in which people commit violent acts and the methods, language, and terms that are used to further their criminal activities.

6. Your Affiant has participated in several firearms trafficking, manufacturing, and possession cases. My training and experience in the investigation of the illegal possession and trafficking of firearms has provided me with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture firearms. I

2

have had discussions with senior ATF agents with further experience and/or expertise in conducting investigations related to individuals who unlawfully possess and traffic in firearms. As a result of my own personal experiences, the training I have received, and the information that I have obtained from working with experienced ATF agents, I am familiar with violations of Federal Firearms Laws.

7. The conclusions and opinions set forth below are based on my experience and training as a law enforcement officer, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. The facts set forth in this Affidavit are known to me because of my personal participation in this investigation and through conversations with other federal, state, and local law enforcement officers and personnel. The following is not an exhaustive recitation of the facts agents and officers have learned during this investigation but are the facts that I believe sufficiently establish probable cause. References to law enforcement personnel in this case will generally be referred to as "agents" or "agents/officers," unless specified by name and agency.

3

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.  The property to be searched shall be referred to as the "**TARGET DEVICE.**" The **TARGET DEVICE** is a gold Apple iPhone in a red protective case with no serial number or specific identifiers marked on the exterior of the phone. A photograph of the **TARGET DEVICE** has been attached to this application for further identification.

9.  The **TARGET DEVICE** is currently located at the ATF office in Greensboro, North Carolina.

10. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICE** described in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11. In October, an ATF CI was communicating with a subject he/she met, later identified as Angel RIVERA. During the CI and RIVERA's interaction RIVERA stated he distributed marijuana, methamphetamine, and firearms. During this interaction, RIVERA provided the CI his telephone number and he would later communicate with the CI through a cellular phone.

12. On October 10, 2022, RIVERA sent the CI a photo of a Glock 43x via a cellular phone, which RIVERA stated was for sale.

4

13. On October 10, 2022, the CI was accompanied by an ATF Undercover Special Agent (UCA) to purchase the firearm. The UCA purchased the firearm for $1,100. During the transaction, RIVERA advised he regularly could obtain and sell firearms. This transaction was arranged via a cellular phone.

14. The firearm purchased was a Glock 43X, which had been reported stolen to the Davidson County Sheriff's Office on June 9, 2022.

15. On October 13, 2022, the CI contacted RIVERA via a cellular phone inquiring if RIVERA had any firearms for sale. RIVERA stated an associate had a Canik handgun for sale for $1,200. The CI and UCA subsequently met RIVERA and Gibran CABRERA to purchase the firearm. During this transaction, CABRERA provided the UCA the Canik handgun while RIVERA was armed with another firearm.

16. On October 14, 2022, RIVERA contacted the UCA via a cellular phone and attempted to sell the UCA and the CI a Glock 10mm handgun for $2,000. This offer was declined by the UCA and CI.

17. On October 17, 2022, RIVERA attempted to sell the UCA and CI an AR platform firearm and sent a picture to the UCA and CI. This communication was via a cellular phone. Subsequently, the UCA purchased a

5

Privately Made Firearm (PMF) from RIVERA which was the firearm RIVERA possessed during the October 14, 2022, transaction. During this transaction, RIVERA stated he was planning to acquire three Glock handguns in the coming week.

18. On October 24, 2022, RIVERA via a cellular phone offered to sell the UCA a Glock handgun affixed with a "Glock switch." This device allows a semi-automatic firearm to function as a machinegun. In addition to the Glock, the UCA arranged to purchase a PMF handgun. In the subsequent transaction, two UCAs met with RIVERA, CABRERA, and Alex CORREA. During this transaction, the UCAs purchased a PMF handgun and a Glock handgun with a "Glock switch" from RIVERA, CABRERA, and CORREA.

19. The "Glock switch" described above was later sent to the ATF Firearms Laboratory, where experts determined the switch did function and met the federal definition of a "machinegun."

20. On December 8, 2022, a complaint was filed and a subsequent warrant for arrest was issued for RIVERA.

21. On January 9, 2023, communication continued via cellular phones between the UCA and RIVERA, and it was agreed they would meet for the UCA to purchase additional firearms. When RIVERA arrived, CABRERA was

6

in the back seat of the vehicle. CABRERA provided the UCA two firearms, a Palmetto State Armory PA-15 and a Glock 43X. Both men where thereafter arrested.

22. Upon arrest, RIVERA was in possession of **TARGET DEVICE,** which was seized by ATF and is currently stored in ATF property in Greensboro, North Carolina.

23. Following the arrest described above, the two firearms seized on January 9, 2023, were entered into ATF Etrace system. The Glock 43x seized had been purchased by Cameron PATTERSON on November 3, 2022, sixty-seven (67) days prior to its seizure.

24. PATTERSON was indicted on January 6, 2023, by a federal grand jury in the Middle District of North Carolina for violation of 18 U.S.C. § 922(a)(1)(A), dealing firearms without a license. These charges were brought from an unrelated investigation.

25. A query conducted on RIVERA and CABRERA determined that neither was a federally licensed firearms dealer (FFL). Neither RIVERA nor CABRERA show to have pistol purchase permits issued by the Forsyth County Sheriff's Office.

## TECHNICAL TERMS

26. Based on my training and experience, I use the following technical term to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

27. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

8

28. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

9

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **TARGET DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

10

## CONCLUSION

Based on the preceding information, there is probable cause to believe that the named items and information more fully described in Attachment B, constituting evidence or fruits of violations of 18 U.S.C. § 922(a)(1)(A), will be found in the **TARGET DEVICE** more fully described in Attachment A.

/S/ Eli VanKuren
Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Dated: February ____, 2023

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

11

## ATTACHMENT A

The property to be searched is as follows:

a. **TARGET DEVICE**: a gold Apple iPhone in a red protective case with no serial number or specific identifiers marked on the exterior of the phone. The TARGET DEVICE is currently located at the ATF office in Greensboro, North Carolina.



This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

12

# ATTACHMENT B

1. All records on **TARGET DEVICE** described in Attachment A that relate to violations of 18 U.S.C. § 922(a)(1)(A), dealing in firearms without a license, and involve RIVERA:

   a. Electronic communications between RIVERA and co-conspirators both known and unknown;

   b. lists of customers and related identifying information;

   c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned **TARGET DEVICE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

13